IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JODY A. ELLIOTT, | ) | CASE NO.  4:23-CV-01320-PAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PAMELA A. BARKER |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN JAY FORSHEY, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Jody Elliott ("Elliott" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Elliott is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Elliott*, Trumbull County Court of Common Pleas Case No. 19-CR-164.  For the following reasons, the undersigned recommends that the Petition be DENIED.

**I.       Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Elliott's conviction as follows:

> {¶1} Appellant, Jody Anton Elliott, appeals from the judgment of conviction, entered after trial by jury, by the Trumbull County Court of Common Pleas. At issue is whether the state advanced sufficient evidence to support appellant's conviction for robbery; he additionally challenges the trial court's failure to

1

provide the jury with an instruction on the lesser-included offense of theft. For the reasons discussed in this opinion, we affirm the trial court.

{¶2} On February 13, 2019, appellant was observed on video entering Macy's, located in the Eastwood Mall, in Niles, Ohio. He immediately walked toward the Polo clothing section of the store. Loss-prevention officers for Macy's were on notice of two previous thefts of a significant amount of Polo clothing in recent months, once in October 2018 and once in December 2018. On both occasions, the individual placed a large amount of clothing in a pile, what the officers described as "staging," picked up the pile, and dashed out of the store. In light of the prior thefts, the similar modus operandi of each theft, and the physical similarities of the suspect to appellant, two officers immediately went onto the store's floor to stop a potential theft.

{¶3} One officer, Mark Eickert, positioned himself near the closest store exit and another officer, Mark Thomas, positioned himself approximately 20 feet behind appellant. Once appellant reached the Polo section, he began "staging" merchandise. He then grabbed some 29 items and began walking away from the check-out registers, toward the exit. Mr. Eickert approached appellant, identified himself as a Macy's loss-prevention officer, and displayed his badge. Appellant immediately dropped the merchandise and fled from Mr. Eickert. According to Mr. Eickert, appellant ran into two attached clothing racks. Appellant stumbled and Mr. Eickert was able to tackle him.

{¶4} During the ensuing struggle, Mr. Eickert attempted to handcuff appellant. Appellant was resisting Mr. Eickert, pushing him away in an attempt to escape. Mr. Thomas arrived to assist Mr. Eickert in restraining appellant. Mr. Eickert was ultimately able to place one handcuff on appellant. During the fracas, Mr. Eickert's left hand was cut.

{¶5} Patrolman Shawn Crank of the Niles Police Department was dispatched to the scene. At the time, Patrolman Crank was situated across the street from the entrance of Macy's. Upon his arrival, he observed three people "scuffling." By this time, Patrolman Crank observed appellant had been handcuffed. Appellant identified himself and stated the loss-prevention officers had "accosted or attacked" him. Appellant had a cut on his head and, as a result, the patrolman sought medical attention for appellant. In light of Mr. Eickert's and Mr. Thomas' statements, the observable clothing appellant allegedly attempted to take, as well as the disheveled condition of the surrounding area, appellant was arrested. He was eventually indicted by the Trumbull County Grand Jury on one count of robbery, a felony of the third degree, in violation of R.C. 2911.02(A)(3) and (B).

{¶6} The matter proceeded to jury trial after which appellant was convicted as charged. Appellant was sentenced to a prison term of 36 months, which the trial court ordered to run consecutively to a separate term of imprisonment appellant was serving at the time of the sentencing hearing.

*State v. Elliott*, 2023-Ohio-181, 2023 WL 352758, at **1-2 (Ohio Ct. App. Jan. 23, 2023).

## II. Procedural History

### A. Trial Court Proceedings

On March 25, 2019, the Trumbull County Grand Jury indicted Elliott on the following charge: one count of Robbery in violation of O.R.C. §§ 2911.02 (A)(3) and (B). (Doc. No. 13-1, Ex. 1.) Elliott entered a plea of not guilty to the charge. (Doc. No. 13-1, Ex. 2.)

On October 11, 2019, Elliott filed a Motion *In Limine* to Exclude Any Evidence Relating to Other Crimes, Wrongs, or Acts. (Doc. No. 13-1, Ex. 3.) On October 21, 2019, the State filed a response to the motion *in limine* or, in the alternative, a notice of intent to introduce evidence under Federal Rule of Evidence 404(B). (Doc. No. 13-1, Ex. 4.)

On January 18, 2022, the trial court granted the State's motion to introduce prior acts. (Doc. No. 13, Ex. 5.)

The case proceeded to jury trial. On January 19, 2022, the jury returned its verdict, finding Elliott guilty of Robbery. (Doc. No. 13-1, Ex. 6.)

On February 7, 2022, the state trial court held a sentencing hearing. (Doc. No. 13-1, Ex. 7.) The trial court sentenced Elliott to 36 months in prison, to run consecutively to his sentence from his other Trumbull County case. (*Id.*)

On March 2, 2022, the trial court filed an Amended Entry on Sentence to correct the case number of Elliott's other Trumbull County case. (Doc. No. 13-1, Ex. 8.)

### B. Direct Appeal

Elliott, through counsel, filed a timely notice of appeal to the Eleventh District Court of Appeals. (Doc. No. 13-1, Ex. 9.) In his appellate brief, he raised the following assignments of error:

> I.  The jury verdict was not supported by sufficient evidence regarding the use of force to support a conviction for robbery.

> II. The failure of the trial court to provide an instruction on the use of force necessary to commit the offense of robbery and of the lesser included offense of theft was reversible error.

(Doc. No. 13-1, Ex. 10.)

On January 23, 2023, the state appellate court affirmed Elliott's convictions. (Doc. No. 13-1, Ex. 12.) *See also State v. Elliott*, 2023-Ohio-181, 2023 WL 352758.

On February 21, 2023, Elliott, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 13-1, Ex. 13.) In his Memorandum in Support of Jurisdiction, Elliott raised the following Propositions of Law:

> I. A conviction for robbery is not supported with sufficient evidence where requirement of "use of force" is not satisfied.
>
> II. A criminal defendant is denied a fair trial when the factfinder determines guilt without all the relevant information.

(Doc. No. 13-1, Ex. 14.) The State filed a response in opposition. (Doc. No. 13-1, Ex. 15.)

On April 25, 2023, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4). (Doc. No. 13-1, Ex. 16.)

**C.     Federal Habeas Petition**

On June 20, 2023,[1] Elliott filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: The sufficiency of the evidence does not support a finding the use of force rose to the level of the offense charged.
>
> > **Supporting Facts**: Petitioner did not verbally or physically threaten the loss prevention officer and the video evidence of the incident the charges stem from shows the only aggression was on the side of the loss-prevention officer.

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until June 22, 2023, Elliott states that he placed it in the prison mailing system on June 20, 2023. (Doc. No. 4 at 15.) Thus, the Court will consider the Petition as filed on June 20, 2023.

> **GROUND TWO**: The trial court erred by failing to provide an instruction on the use of force necessary to commit the offense of robbery and of lesser included offense of theft.
>
> > **Supporting Facts**: The jury was never advised of the components required to find force was used in the course of a crime. The jury was further never advised of any lesser-included offenses.

(Doc. No. 4.)

On March 15, 2024, Warden Jay Forshey ("Respondent") filed the Return of Writ. (Doc. No. 13.) Elliott did not file a Traverse.

### III. Non-Cognizable Claim

In Ground Two, Elliott argues that the "trial court erred by failing to provide an instruction on the use of force necessary to commit the offense of robbery and of lesser included offense of theft." (Doc. No. 4 at 7.)

Respondent argues that Ground Two is non-cognizable in federal habeas proceedings. (Doc. No. 13 at 15.) Respondent states that "[a]lleged errors in jury instructions normally do not rise to the level of federal constitutional violations." (*Id.*) (citations omitted). Respondent asserts that "when the evidence presented does not support a requested jury instruction and that determination is based upon a state court's interpretation and application of state law, an asserted error relating to the jury instruction is not cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice." (*Id.*) (citation omitted). Respondent maintains that the state appellate court held that the trial court did not err in denying the request for a lesser-included offense instruction, and "[a]bsent proof of an erroneous jury instruction, Elliott cannot meet the overall burden of showing that the state court ruling involved an unreasonable application of federal law." (*Id.* at 17.) In addition, Respondent argues that Elliott makes no showing of a fundamental miscarriage of justice, nor does the record reveal a fundamental miscarriage of justice. (*Id.*) Therefore, Ground Two is non-cognizable.

As Elliott failed to file a Traverse, Respondent's arguments are unopposed.

5

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, it has declined to decide whether the Due Process Clause would require the giving of lesser-included jury instructions in a noncapital case. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). The Sixth Circuit, however, has held that failure to instruct on a lesser-included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). While some court opinions have also examined the merits of the underlying claim in determining that there was no violation of due process in addition to finding the claim non-cognizable on habeas review (*see, e.g., Ream v. Bunting*, Case No. 3:15–cv–00313, 2017 WL 7805229, at **17-18 (N.D. Ohio Apr. 12, 2017), *report and recommendation adopted by* 2017 WL 7805229 (N.D. Ohio Feb, 28, 2018); *Raider v. Clipper*, Case No. 1:19-CV-00306, 2022 WL 993685, at **10-11 (N.D. Ohio Jan. 6, 2022), *report and recommendation adopted as modified by* 2022 WL 993685 (N.D Ohio Mar. 31, 2022)), the Sixth Circuit is clear that habeas relief cannot lie for a trial court's failure to provide a lesser included offense instruction:

> Moreover, even if Scott's claim was not procedurally defaulted, and even if the trial court erred as a matter of state law, that is not a sufficient basis for granting habeas relief. Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, *see Beck v. Alabama,* 447 U.S. 625, 627, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), it has not so held in noncapital cases. To the

> contrary, the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.1990). For all of these reasons, Scott is not entitled to habeas relief on this claim.

*Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). *See also Tegeler v. Renico*, 253 F. App'x 521, 524 (6th Cir. 2007) ("Tegeler next argues that the trial court violated his due process rights by failing to give a jury instruction on the lesser-included offense of voluntary manslaughter. Precedent forecloses this argument. '[T]he Constitution,' we have held, 'does not require a lesser-included offense instruction in noncapital cases.' *Campbell v. Coyle,* 260 F.3d 531, 541 (6th Cir. 2001); *see also Bagby v. Sowders,* 894 F.2d 792, 796–97 (6th Cir. 1990) (en banc).").

In addition, "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Estelle*, 502 U.S. at 67-68. *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001), *superseded by statute as stated in Stewart v. Winn*, 967 F.3d at 540. Stated another way, a state court's interpretation of state law is binding upon a federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Bibbs v. Bunting*, 1:16-cv-02069, 2017 WL 4083558, at *15 (N.D. Ohio May 17, 2017). *See also Thompson v. Williams*, 685 F. Supp. 2d 712, 721 (N.D. Ohio 2010) (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.")

For the foregoing reasons, the Court recommends Ground Two be DISMISSED as non-cognizable.

### IV. Review on the Merits

**A.      Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

7

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v.Smith*, ⸺ U.S. ⸺, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

9

1. **Ground One**

In Ground One, Elliott argues that the "sufficiency of the evidence does not support a finding the use of force rose to the level of the offense charged." (Doc. No. 4 at 5.) In support, Elliott asserts that he "did not verbally or physically threaten the loss prevention officer" and video evidence of the incident shows that "the only aggression was on the side of the loss prevention officer." (*Id.*)

Respondent argues that "there was indeed sufficient evidence to sustain the conviction" and the state appellate court's decision rejecting this ground is entitled to AEDPA deference. (Doc. No. 13 at 7.) Respondent asserts that Elliott "failed to demonstrate with clear and convincing evidence that the state appellate court's rejection of his sufficiency-of-the-evidence claim was contrary to United States Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented." (*Id.* at 14) (citation omitted). Therefore, Respondent maintains, this Court must dismiss Ground One as meritless. (*Id.*)

As Elliott failed to file a Traverse, Respondent's arguments are unopposed.

Elliott raised a sufficiency of the evidence claim to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 13-1, Ex. 10, 14.) The state appellate court considered this claim on the merits and rejected it as follows:

> {¶8} "A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial." (citations omitted.) *State v. Bernard*, 2018-Ohio-351, 104 N.E.3d 69, ¶56. (11th Dist.) "'In reviewing the record for sufficiency, "the proper inquiry is whether, after viewing the evidence most favorably to the prosecution, the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, 901 N.E.2d 856, ¶9 (11th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).
>
> {¶9} Appellant was convicted of robbery, in violation of R.C. 2911.02(A)(3), which provides:
>
> {¶10} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * (3) Use or threaten the immediate use of force against another."

{¶11} Appellant does not contest the theft or fleeing components of the crime; rather, he claims that the state failed to produce sufficient evidence that he either used or threatened the immediate use of force.

{¶12} R.C. 2901.01(A)(1) defines the term "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." This court has observed that:

> {¶13} "[I]n applying the robbery statute R.C. 2911.02(A)(3) in the shoplifting context, courts have consistently concluded that using one's body parts in any manner to resist detainment by a security guard after a shoplifting incident elevates a theft offense to robbery. Acts that have been held to fall within the statutory definition of force by Ohio courts include pushing or striking a store employee. *State v. Martin,* 10th Dist. Franklin Nos. 02AP-33, 02AP-34, 2002-Ohio-4769, ¶31. *See also State v. Zoya,* 8th Dist. Cuyahoga No. 64322, 1993 WL 526791 (Dec[.] 16, 1993) (defendant tried to force his way past the assistant manager by using his body weight, twisting around and swinging his arms)." *State v. Muncy*, 11th Dist. Ashtabula No. 2011-A-0066, 2012-Ohio-2830, ¶19.

{¶14} In *Muncy*, the defendant, in attempting to leave a store with unpaid-for merchandise, used his upper body to knock store security out of the way. This court unanimously concluded this act was sufficient to meet the force element of robbery under R.C. 2911.02(A)(3). *Muncy,* at ¶ 20. *See also State v. Grega*, 11th Dist. Ashtabula No. 2012-A-0036, 2013-Ohio-4094 ¶ 62 (State presented sufficient evidence to meet the force element of robbery under subsection (A)(3) where evidence demonstrated the defendant either pushed or picked up a store employee to exit the establishment.); *State v. Pillow*, 2d Dist. Greene No. 07CA095, 2008-Ohio-6046, ¶ 23-24 (Court found sufficient evidence of force under subsection (A)(3) where a "tussle" or "struggle" ensued after a defendant tried to physically move a drive-through-store employee so he could leave with items and employee attempted to restrain the defendant.).

{¶15} Appellant contends the state failed to adduce sufficient evidence of force because he did not display physical aggression, but merely attempted to leave the store upon being confronted. He emphasizes that Mr. Eickert instigated the physical altercation. And, he maintains, there was no evidence that he posed any actual or potential harm to the loss-prevention officers. Appellant's argument essentially asks this court to review the evidence in a light most favorable to his defense. A sufficiency-of-the-evidence analysis, however, requires a reviewing court to view the evidence in a light most favorable to the prosecution.

{¶16} Appellant's construction of the evidence somewhat "whitewashes" his actions. While he did not verbally threaten Mr. Eickert when he was confronted, he testified that when the loss-prevention officer attempted to handcuff him, he pulled his arm back and pushed the officer. Force does not necessarily require a defendant to pose actual or potential harm to victim(s). It merely requires, inter

alia, a defendant to exert any violence physically by any means. Appellant's admission to pushing Mr. Eickert is physical violence.

{¶17} Moreover, Mr. Eickert testified appellant made an overt attempt to escape the store after attempting to commit a theft of a significant amount of merchandise. According to Mr. Eickert, the role of a loss-prevention officer is to, among other things, prevent theft of store merchandise. And Mr. Eickert and Mr. Thomas both testified appellant matched a suspect who had previously taken large amounts of merchandise from the store in the past. When appellant tried to flee the store, he stumbled after running into two combined clothing racks. In attempting to escape, appellant created a situation in which Mr. Eickert, by virtue of his role in loss prevention, was required to try and apprehend him. Mr. Eickert accordingly tackled appellant, and the loss-prevention officers attempted to restrain appellant as he resisted. When Patrolman Crank arrived on scene, he observed appellant, Mr. Eickert, and Mr. Thomas in a struggle.

{¶18} While appellant did not threaten the loss-prevention officers at first, he pushed Mr. Eickert after being confronted. In the ensuing scuffle, Mr. Eickert's hand was cut. We cannot say that appellant's actions of (1) pushing Mr. Eickert and (2) subsequently attempting to escape while resisting did not involve force. Similar to the actions of the defendants in *Muncy*, 2012-Ohio-2830, *Grega*, 2013-Ohio-4094, and *Pillow*, 2008-Ohio-6046, appellant physically exerted a form of violence against the loss-prevention officers. Under the circumstances, we hold a reasonable jury could conclude appellant's actions exhibited a form of violence to resist detention by the loss-prevention officers. Thus, there was sufficient evidence to meet the statutory element of force under subsection (A)(3) of the robbery statute.

{¶19} Appellant's first assignment of error lacks merit.

*State v. Elliott*, 2023-Ohio-181, 2023 WL 352758, at **2-3.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of

12

witnesses. *Id. See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782, at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.) *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Elliott's convictions were supported by sufficient evidence. In resolving Elliott's sufficiency of the evidence claim, the state appellate court accurately summarized the evidence and correctly identified the applicable law.[2] As the state appellate court noted, Elliott testified that when loss-prevention officer Mark Eickert attempted to handcuff him, he pulled his arm back and pushed the officer at least twice. (Doc. No. 13-2 at PageID# 664, 676-78, 688.) Elliott admitted to resisting the loss prevention officers' attempts to detain him. (*Id.* at PageID# 664-65, 688-90.) Eickert testified that Elliott pushed him off, trying to get away. (*Id.* at PageID# 561-62.) Officer Crank testified that when he arrived on scene, three gentlemen "were on the floor physically scuffling around" and Eickert's left hand was cut in the scuffle. (*Id.* at PageID# 508, 513.)

It is not for this Court to weigh evidence or determine credibility. *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651. While Elliott interprets evidence in a light most favorable to him, that is not the standard – the Court must view the evidence in a light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

Under the "doubly deferential" standard, the Court cannot say the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Brown v. Konteh*, 567 F.3d at 205. Accordingly, it is recommended the Court find Ground One lacks merit.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: January 30, 2025            *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

---

[2] A state court's interpretation of state law is binding upon a federal habeas court. *See Bradshaw*, 546 U.S. at 76; *Bibbs*, 2017 WL 4083558, at *15.

14

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).